UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN F. TAMBURO, d/b/a MAN'S, BEST FRIEND SOFTWARE and VERSIT CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVEN DWORKIN; KRISTEN HENRY; ROXANNE HAYES; KAREN MILLS; WILD SYSTEMS PTY. LTD, an Australian corporation,<br><br>        Defendants. | Case No. 04 C 3317<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Defendants Steven Dworkin, Kristen Henry, Roxanne Hayes, Karen Mills, and Wild Systems Pty. Ltd. have filed this motion to dismiss plaintiffs John F. Tamburo and Versity Corporation's sixth amended complaint alleging lack of personal jurisdiction and failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss for lack of personal jurisdiction is granted and the motion to dismiss for failure to state a claim upon which relief can be granted is denied as moot.

## BACKGROUND

Plaintiffs John F. Tamburo ("Tamburo") d/b/a Man's Best Friend Software ("MBFS") and Versity Corporation ("Versity") have sued four individuals, who are not citizens of Illinois, and an Australian corporation under numerous legal theories for losses MBFS allegedly incurred arising out of disputes as to ownership of the contents of

1

online dog pedigree databases.[1] Presently before the court is the defendants' joint motion to dismiss plaintiffs' sixth amended complaint, which argues that the court lacks general or specific personal jurisdiction over the defendants. Further, the defendants allege that the plaintiffs have failed to state claims upon which relief can be granted and that therefore the complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Personal Jurisdiction**

In cases based upon diversity of citizenship, federal district courts sitting in Illinois have personal jurisdiction over nonresident defendants only to the extent that Illinois courts would have jurisdiction.[2] *Edelson v. Chi'en*, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005); *Interlease Aviation Investors LLC v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 905 (2003); *See also DeLuxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1212 (7th Cir. 1984). In Illinois, courts have personal jurisdiction over

---

[1] A more detailed version of the facts of this case can be found in the court's orders addressing defendant's motions to dismiss the plaintiffs' first through fifth amended complaints and need not be further rehearsed herein.

[2] In their complaint, plaintiffs also allege claims arising under federal law, *viz.*, seeking declaratory judgment 28 U.S.C. § 2201 (Count 1) and violation of federal antitrust statutes, 15 U.S.C. § 1 *et seq*. (Count 11). In its order of August 3, 2006 concerning defendants' motion to dismiss plaintiffs' fifth amended complaint, the court noted that the there is considerable uncertainty, reflected in a circuit split, as to whether the Sherman Act authorizes nationwide service of process when suit is brought in a district other than that where the defendant resides, is found, or transacts business, and the resulting impact of that uncertainty upon the potential personal jurisdiction of the court over the defendants in this case (the Seventh Circuit has not yet held upon the issue). *See Sanderson v. Spectrum Labs*, 248 F.3d 1159 (Table) 2000 WL 1909678 at *3 (7th Cir. Dec. 29, 2000) (declining to decide the issue); *see also and compare GTE Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir 2000) *with Go-Video, Inc. v. Akai Elec. Co.*, 885F.2d 1406, 1414-16 (9th Cir, 1989). Moreover, the Act authorizes worldwide service of process only on corporations and not on private individuals, and thus applies only to defendant Wild Systems Pty. Ltd. 15 U.S.C. § 22, *see also United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F. Supp. 2d 904, 911 (N.D. Ill. 1999). The court directed the defendants to file a renewed motion to dismiss for lack of personal jurisdiction addressing whether the federal antitrust statutes authorize nationwide service of process in this case. Neither the defendants nor the plaintiffs, in their response, have substantially briefed this issue with respect to the motion under consideration. In view of the court's resolution of the personal jurisdiction issues in this order, there is no need at this time to resolve the issue of whether worldwide service of process is permitted.

nonresident defendants if permitted by: (1) Illinois statutory law; (2) the Illinois Constitution; and (3) the Constitution of the United States. *Id*.

The Illinois long-arm statute currently extends personal jurisdiction to the limit permitted by the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c); *See also Vanguard Airlines*, 262 F. Supp. 2d at 905 (citing *LaSalle Bank Nat'l Ass'n v. Epstein*, No. 9 C 7820, 2000 WL 283072 at *1 (N.D. Ill. Mar 9, 2000). Moreover, the Seventh Circuit has stated that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction" and that not since the Illinois Supreme Court's 1990 *Rollins* decision has an Illinois court encountered a case in which federal due process requirements permitted personal jurisdiction and Illinois due process requirements prohibited it. *Hyatt International Corp. v. Coco*, 302 F. 3d 707, 715-16 (7th Cir. 2002). Thus, the three requirements for personal jurisdiction collapse into a single analysis. Consequently, other courts of the Seventh Circuit have conducted only a federal due process analysis in determining whether personal jurisdiction may be exerted over nonresident parties. *Vanguard Airlines*, 262 F. Supp. 2d at 906 (citing *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531 at *4 (N.D. Ill. Dec. 23, 2002)); *United Fin. Mortgage Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 891-92 (N.D. Ill. 2002)).

Federal due process requirements prescribe that nonresident defendants have sufficient minimum contacts with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt*, 302 F.3d at 713 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The standard of

3

"minimum contacts" depends upon whether general or specific personal jurisdiction is alleged. *Vanguard Airlines*, 262 F. Supp. 2d at 906 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The defendants' motion to dismiss argues that this court has neither general nor specific personal jurisdiction over any of the defendants, all of whom are nonresidents. The court addresses each type of jurisdiction in turn for each defendant.

### **General Personal Jurisdiction**

For purposes of personal jurisdiction under the Illinois long-arm statute, general jurisdiction applies only when a nonresident defendant has had continuous and systematic general business with the forum state such that it demonstrates a purpose on the part of the defendant to avail herself of the protection of Illinois law. *RAR*, 107 F.3d at 1277; *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp 2d 902, 906 (N.D. Ill. 2006). Although there is no "bright line rule" for determining whether a defendant's business contacts with the forum are continuous and systematic, the standard is quite high; requiring a showing that the defendant is conducting business that is fairly permanent and continuous, and of such character and extent as to justify the inference that the defendant has subjected himself to the jurisdiction and laws of the forum. *Laiquat Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 907 (Ill. App. Ct. 2001); *Alderson v. Southern Co.*, 747 N.E.2d 926, 940 (Ill. App. Ct. 2001). Thus, the Illinois long-arm statute demands a "course of business" or "regularity of activities" as opposed to isolated or sporadic contacts or transactions. *Alderson*, 747 N.E.2d at 940 (quoting *Gaidar v. Tippecanoe Distribution Serv., Inc.*, N.E.2d 316, 320 (Ill. App. Ct. 1998); *Radosta v. Devil's Head Ski Lodge,* 526 N.E.2d 561, 564 (Ill. App. Ct. 1988)).

4

Moreover, although a plaintiff need only make a prima facie case demonstrating general personal jurisdiction, it is not enough that a plaintiff simply allege that the defendant has such a connection when the defendant presents facts to the contrary, and it is not acceptable to require a nonresident to defend herself against a claim when she has alleged facts which, if true, would negate the jurisdiction, without determining what the facts are. *TCA Intern., Inc. v. B & B Custom Auto, Inc.*, 701 N.E.2d 105, 113 (Ill. App. Ct. 1998).

Defendant Wild Systems Pty. Ltd.

Defendant Wild Systems Pty. Ltd. ("Wild") is a corporation organized under the laws of Australia. Wild's products are sold via a website (www.breedmate.com) ("Breedmate") through which its breeding and bloodline database products may be purchased online. Wild does not have an Illinois distributor or agent, and approximately 1% of Wild's sales via its website are to customers located in Illinois. No facts have been adduced by the plaintiffs to suggest that Wild's website is targeted deliberately or specifically at Illinois consumers. Generally, the mere maintenance of a website, even an interactive one through which orders may be placed, is not sufficient in itself to establish general jurisdiction over a foreign defendant. *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F.Supp.2d 824, 933 (N.D. Ill. 2000); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Thus, Wild's maintenance of a website through which products may be ordered by Illinois customers does not constitute, in itself, sufficiently continuous and systematic business activity to establish general jurisdiction by this court.

Defendant Dworkin

Plaintiffs allege that defendant Steven Dworkin ("Dworkin") is engaged in the business of breeding dogs and registering them with the American Kennel Club ("AKC"), a New York corporation. Plaintiffs allege, *inter alia*, that Dworkin's dogs have competed in sundry dog shows in the United States, that Dworkin has sold dogs to individuals in the United States and maintains an email address through which he corresponds with individuals in the course of such business, and that Dworkin has maintained an "interactive" website (www.keesdog.com). Nowhere, however, do they allege that Dworkin has had any continuous and systematic contact, or even a single business transaction, with even a single individual in the state of Illinois. Absent an allegation of continuous and systematic business activity with even so much as a single customer, this court that cannot find that it may exert general jurisdiction over Dworkin.

Defendants Henry, Mills, and Hayes

As with Dworkin *supra*, Plaintiffs allege that Kristen Henry ("Henry"), Karen Mills ("Mills"), and Roxanne Hayes ("Hayes") are in the business of breeding dogs within the United States and registering them with the AKC. Plaintiffs further allege that Henry, Mills, and Hayes have individually shown their dogs in multiple shows in Illinois and may individually have sold some of their dogs to customers in Illinois. However, no facts have been adduced by the plaintiffs to suggest that Henry's, Mills' or Hayes' occasional dog show exhibitions, or their occasional sales of dogs to Illinois residents, are targeted deliberately or specifically at Illinois consumers. Transactions occurring merely casually or in isolation are not sufficient to rise to the level of permanence and continuity requisite to establish general jurisdiction in Illinois. *Bolger v. Nautica Int'l, Inc.*, 861

6

N.E.2d 666, 670 (Ill. App. Ct. 2007); *Recycling Sciences Int'l, Inc v. Soil Restoration and Recycling, LLC*, 159 F. Supp. 2d 1095, 1098 (N.D. Ill. 2001). Since plaintiffs do not allege facts that establish continuous and systematic business activity targeted at citizens of Illinois, but merely occasional opportunistic sales and exhibitions at dog shows located in Illinois, the court cannot find that general jurisdiction can be exerted over Henry, Mills, or Hayes.

## **Specific Personal Jurisdiction**

Under the Illinois long-arm statute, a court may exert specific jurisdiction over a nonresident defendant if the defendant has (1) purposefully established minimum contacts with the state; (2) if the cause of action arises out of, or is related to, the defendant's contacts with the forum; and (3) if the exertion of jurisdiction is constitutionally reasonable. *United Phosphorus Ltd. v. Angus Chemical Co.*, 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999); *RAR*, 107 F.3d at 1277; *Logan Products v. Optibase*, 103 F.3d 49, 52 (7th Cir. 1996). The United States Supreme Court has delineated two means by which the requisite minimum contacts may be established for purposes of specific jurisdiction: (1) purposeful availment by the defendant of the benefits and protections of the laws of the forum state; and (2) harm to an individual within the state where the harm is both intentional and aimed at the forum state. *Hy Cite Corp. v. BadBusinessBureau.Com*, 297 F. Supp. 2d 1154, 1163 (W.D.Wis. 2004) (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987); *Calder v. Jones*, 465 U.S. 783, 788-90 (1984)).

Plaintiffs have argued that the facts alleged in the discussion *supra* concerning general jurisdiction are also sufficient to permit this court to exert specific jurisdiction

over each of the defendants: Wild because of its business transacted with Illinois citizens via its Breedmate website; and Henry, Mills, and Hayes via their occasional participation in dog shows in Illinois and alleged isolated sales of their dogs to Illinois citizens. Plaintiffs, in their complaint, have failed to allege a single business transaction by Dworkin targeted at a citizen of Illinois, nor do they allege that Dworkin transacts any business at all via his "interactive" website.

A single business transaction, or even a solicitation of business, may be sufficient to establish specific jurisdiction by an Illinois court over a nonresident defendant. *Traveler's Health Ass'n v. Commonwealth of Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990); *J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir. 1987). However, plaintiffs' claim that these isolated and individual contacts are sufficient to establish specific jurisdiction over the defendants is a red herring. To establish specific jurisdiction, even a single transaction by the defendant must (1) give rise to the cause of action that is the basis of the suit; and (2) be one by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state and voluntarily invokes the benefits and protections of Illinois law. *Dilling v. Sergio*, 635 N.E.2d 590, 594 (App. Ct. Ill. 1990). Thus, there must be a causal nexus between the transaction and the cause of action. *See Hy Cite*, 297 F. Supp. 2d at 1165-65.

The claims asserted by the plaintiffs in their complaint do not arise from, nor are they in any way related to, defendants Henry's, Mills', and Hayes' alleged sales of dogs to citizens of Illinois, nor from their occasional appearances at Illinois dog shows. Nor

do they arise from, nor are they related to, Wild's internet sales of canine bloodline software to sundry Illinois citizens. Rather, the plaintiffs claim that the source of their alleged injuries are statements posted to various internet bulletin boards and email user's lists and on Henry's, Mills', and Hayes' noncommercial pedigree database websites. As such, even if the defendants' contacts with Illinois were sufficient to establish minimum contacts, the crucial nexus between the various transactions and the plaintiffs' claims is absent. Therefore, those transactions cannot form the basis of specific jurisdiction over the defendants.

The question of specific jurisdiction thus turns on whether the posting of the alleged injurious statements on internet bulletin boards and on the defendants' pedigree websites constitutes sufficient minimum contact with Illinois so as to justify the court's exerting specific jurisdiction over the defendants.

Internet Chat Groups and Specific Jurisdiction

Plaintiffs allege that defendants Dworkin, Henry, Mills and Hays circulated public messages to "numerous Internet chat groups" allegedly accusing plaintiffs of "theft", "selling stolen goods," and "hacking." Plaintiffs' Memorandum of Law in Opposition to Defendants' Third Motion to Dismiss, p. 3. However, the posting of allegedly injurious messages to public internet chat groups is insufficient, in and of itself, to establish minimum contacts with Illinois adequate to justify the exertion of specific jurisdiction. *Kovacs v. Jim*, No. 02 C 7020, 2002 WL 31507172 at *2 (N.D. Ill. Nov. 12, 2002).

The Seventh Circuit has not yet directly addressed the issue of specific jurisdiction arising from internet use, but most courts have followed the "sliding scale" analysis established in *Zippo Mfg. Co. v. Zippo Dot Com, Inc*. 952 F. Supp. 1119, 1123-

9

24 (W.D.Pa. 1997); *See, e.g.. Jackson v. California Newspaper Partnership*, 406 F. Supp. 2d 893, 897 (N.D. Ill. 2005); *Bombliss v. Cornelsen*, 824 N.E.2d 1175, 1180 (Ill. App. Ct. 2005); *Euromarket Designs*, 96 F.Supp.2d at 837-38; *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631 at *5; *School Stuff, Inc. v. Sch Stuff, Inc.*, No. 00 C 5593, 2001 WL 558050 at *3 (N.D. Ill. May 21, 2001); *but see Hy Cite*, 297 F. Supp. 2d at 1160 (interactivity of a website cannot form the basis for personal jurisdiction unless a nexus exists between the website and the cause of action or unless contacts are systematic and continuous).

Under the *Zippo* analysis, a given website occupies a position on a spectrum ranging from "interactive" to "passive." Interactive websites are those wherein contracts are completed online with residents of a foreign jurisdiction, and the defendant receives profit directly from web-related activity. *Euromarket Designs*, 96 F.Supp.2d at 837 (citing *Zippo*, 952 F. Supp. at 1124). Such websites have been generally found to be purposefully directing their business activities at the forum state, and courts in the forum state can therefore exert specific jurisdiction. *Euromarket Designs*, 96 F.Supp.2d at 837. At the opposite end of the spectrum are purely passive websites in which a defendant has simply posted information regarding their company or activities on an Internet website which is accessible to users in foreign jurisdictions; generally these are held to be insufficiently directed at the forum state to result in the exertion of specific jurisdiction. *Id.* at 838. In between these two ends of the spectrum are interactive websites where a user can exchange information with the host computer. *Id.* at 837. In such cases, the level of interactivity is measured "by examining the level of interactivity and the

commercial nature of the exchange of information that occurs on the Website." *Id.* (quoting *Zippo*, 952 F. Supp. at 1124).

With respect to the position of the internet chat room and e-mail discussion lists on the sliding scale, such internet forums would appear to be located even below the bottom limits of the passive category. *Kovacs*, No. 02 C 7020, 2002 WL 31507172 at *2. The plaintiffs make no claim that the defendants are owners or operators of the chat rooms[3], that they use them to transact business directly, or that they are targeted specifically at Illinois citizens. Defendants' activity, rather, consists of posting public messages to the internet sites from their respective locations outside of Illinois, permitting those with access to the sites to read the material. *Id.* Were this to be a basis for specific jurisdiction, such jurisdiction would be ubiquitous because access to a given website is not limited by geography. *See, e.g., Hy Cite*, 297 F. Supp. 2d at 1159; *Digital Control, Inc., v. Boretronics, Inc.*, 161 F. Supp. 2d 1183, 1186 (W.D.Wash. 2001); *Millenium Enterprises, Inc. v. Millenium Music, LP*, 33 F. Supp. 2d 907, 922 (D.Or. 1999).

<u>Defendants' Websites and Specific Jurisdiction</u>

With respect to the defendants' websites, although both sides agree that the websites are interactive, they disagree on the degree of interactivity and whether the websites are commercial.

<u>Defendant Henry's website</u>

---

[3] The public chat rooms and internet discussion lists named by plaintiff Tamburo in his affidavit are breedmate@yahoogroups.com and apdug@yahoogroups.com,, keeshond-l@apple.ease.lsoft.com, Although individuals may be referred to other domains to purchase products, no business transactions are carried out directly through these discussion groups.

11

Henry's website is characterized by both plaintiffs and defendants as "partly interactive" (falling somewhere in the middle of the *Zippo* spectrum) because it "permits people to enter and search for animal pedigrees". Plaintiffs' Memorandum of Law in Opposition to Defendants' Third Motion to Dismiss, p. 18; *See Bombliss*, 824 N.E.2d at 1180. The court disagrees. According to *Bombliss*, such partial interactivity requires that customers in foreign jurisdictions be able to communicate regarding the defendant's services or products. *Id.* On the face of plaintiffs' claims, and their response to this motion, the only functions of the website are to allow individuals to retrieve information concerning pedigree lines. Entering search delineators does not rise to the level of communication concerning products or services; it merely serves as a convenience for website visitors in locating the desired specific information, much as an index would. Since it fails to meet the intermediate interactivity requirements of the Zippo analysis, Henry's website must be considered passive and therefore specific jurisdiction cannot arise from any putative contacts between citizens of Illinois and the website.

Defendants Hayes' and Mills' Websites

Plaintiffs further contend that Hayes' and Mills' websites are fully interactive and therefore that Hayes and Mills are therefore subject to this court's specific jurisdiction. A "fully interactive" website is one in which contracts are completed online with residents of a foreign jurisdiction, and the defendant receives profit directly from web-related activity. *Euromarket Designs*, 96 F.Supp.2d at 837 (citing *Zippo*, 952 F. Supp. at 1124). Plaintiffs base these claims on the assertion that both Hayes and Mills solicit donations to assist in defraying operating expenses, and that Hayes provides sequential preference in adding pedigree data to her site to individuals who donate to the site.

However, in the case of Mills, her website upon which the allegedly tortious statements were made (www.patriotgold.com) ("patriotgold") is not the same as that which plaintiffs claim is fully interactive because it solicits donations (www.poodlepedigree.com) ("poodlepedigree"); rather it is merely linked to it. Plaintiffs do not assert any facts to support their contention that the patriotgold website is fully, or even partially, interactive, apart from the link to the poodlepedigree site.

It is more reasonable to locate all of these websites in the middle of the *Zippo* spectrum. Such sites "allow visitors to post messages (to which [d]efendants sometimes respond) … and make donations." *George S. May Intern'l Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1059 (N.D.Ill 2006). For such websites, "the likelihood that personal jurisdiction can be exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Zippo*, 952 F. Supp. at 1124.

Plaintiffs' attempts to characterize Hayes' and Mills' websites as being "commercial" in nature are misleading. No products or services are sold via the websites. None of the websites *requires* payment for providing uploading pedigree information into the database or for pedigree analysis. Although they solicit donations to assist in the support of the various websites (and, in the case of Hayes, provides sequential preference to donors in uploading their pedigree information), any such donation is strictly voluntary. Plaintiffs do not allege that payment is required, or even expected, for access to the defendants' databases. However, even in the unlikely eventuality that the websites could be considered to be commercial, and to require payment in return for services provided, plaintiffs have failed once again to allege any credible nexus between the

alleged tortious acts of the defendants and any transaction occurring between the defendants and a citizen of Illinois. If such a nexus cannot be established between the website and the cause of action there can be no specific jurisdiction. *Hy Cite*, 297 F. Supp. 2d at 1160.

Finally, the court notes that the Illinois Court of Appeals has recently affirmed on appeal a decision from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois concerning a virtually identical case involving alleged tortious statements made against plaintiffs Tamburo and MBFS on a nonresident defendant's partially interactive website. *Tamburo v. Andrews*, No. 3-06-0347 slip op. at 8 (Ill. App. Ct. June 15, 2007). The circuit court granted the defendant's motion to dismiss on grounds of lack of specific personal jurisdiction, and the court of appeals affirmed. *Id.*

Because plaintiffs have failed to establish a nexus between the defendants' allegedly tortious acts and any commercial transactions between the defendants and Illinois citizens, the court cannot establish specific personal jurisdiction over the defendants.

### **The "Effects Test"**

Next, plaintiffs claim that because the defendants have allegedly committed an intentional tort against Illinois citizens (the plaintiffs) and because the resulting alleged injury occurred in Illinois, this court should exert personal jurisdiction over the defendants. The plaintiffs cite *Vanguard Airlines* as their sole authority for this claim. 262 F. Supp. 2d 898, 911. However, Plaintiffs' reliance on *Vanguard* is misplaced. The intentional tort in *Vanguard* was coupled with a business transaction between the nonresident defendants and an Illinois corporation, involving multiple contacts and

connections between the two parties sufficient to establish minimum contacts between the defendants and Illinois. *Id.* at 909-10. No such connections or transactions have been established by the plaintiffs in the instant case.

The Seventh Circuit has spoken directly to this issue in *Wallace v. Herron*: "We do not believe … that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." 778 F.2d 391, 394 (7th Cir. 1985). To do so, continued the court, "would significantly undercut our traditional due-process protection for out-of-state defendants." *Id.* The court continued by saying that the so-called "effects test" is merely another way of establishing the defendant's relevant contacts with the forum state: the defendant must still purposefully avail himself of the privilege of conducting activities within the forum state, and invoking the benefits and protections of its laws. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). And in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, the Seventh Circuit noted that in all other cases which had come to its attention, the defendants had done more than brought about an injury to an interest located in the particular state. 34 F.3d 410, 412 (7th Cir. 1994).

Thus, in *May*, the defendant's website actively conducted business in Illinois, and the defendant had negotiated business arrangements with Illinois entities in addition to the intentional torts alleged, thus establishing sufficient minimum contacts. 409 F. Supp. 2d 1059. In *Bombliss*, the plaintiffs had established minimum contacts emerging from a transaction with the defendants out of which the alleged tortious acts arose. 824 N.E.2d 1181. And in *Euromarket Designs*, minimum contacts arose, *inter alia*, via the

defendant's fully interactive retail website displaying the defendant's trademark name and otherwise directing business at Illinois. 96 F.Supp.2d at 840.

As has been discussed *supra*, the plaintiffs have failed to plead facts adequately alleging minimum contacts between the defendants and Illinois. The mere fact that they assert that the defendants have asserted an intentional tort against the plaintiff is insufficient to sustain the exertion of personal jurisdiction.

### Conspiracy Jurisdiction

Plaintiffs additionally allege a civil conspiracy between the defendants to drive the plaintiffs out of business. Plaintiffs allege that defendants devised a private mailing list on the Internet Service Provider Yahoo!, Inc., with the email address apdug@yahoogroups.com ("APDUG")[4]. Plaintiffs allege that defendants created the list to coordinate their efforts in attacking plaintiffs and claim that subpoenaed documents obtained by the plaintiffs have revealed allegedly defamatory emails directed at the plaintiffs. Defendant Henry has testified in her affidavit that the purpose of APDUG was for users of the Alfirin pedigree software to discuss technical issues.

Civil conspiracy consists of a combination of two or more people acting with the purpose of accomplishing by concerted action either an unlawful purpose via lawful means or a lawful purpose via unlawful means. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill, 1994) (citing *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 329 (Ill. 1990). To plead successfully facts supporting conspiracy jurisdiction, plaintiffs must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state. *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1392-93 (7th Cir. 1983). Although agreement among the alleged conspirators is an

---
[4] APDUG is an acronym for Alfirin Pedigree Database Users Group.

16

element of a cause of action for civil conspiracy, it does not have the importance it has in criminal conspiracy; an agreement to commit an unlawful act is potentially a crime but it is not a tort. *Adcock*, 645 N.E.2d at 894. Rather, one of the parties must complete an overt act in furtherance of the agreement that is itself either a tort or unlawful. *Id.*

The formation of a private internet discussion group by the defendants is not an illegal act. Any alleged conspiracy formulated by defendants via the discussion group is likewise, in itself, not a sufficient cause of action of civil conspiracy. Presumably, plaintiffs are attempting to argue that the overt acts in furtherance of the conspiracy are the alleged tortious statements made by the defendants on their websites and in the public internet discussion groups email lists. However, as discussed *supra*, the mere assertion of an intentional tort by the plaintiffs coupled with a claim of injury is insufficient to establish minimum contacts with Illinois, and therefore establish jurisdiction. *See Indianapolis Colts*, 34 F.3d at 412. Since the plaintiffs are unable to establish that a substantial overt act was conducted in Illinois (via a demonstration of minimum contacts between the defendants and Illinois), the overt act requirement, and therefore the cause of action, must fail.

## Sanction Jurisdiction

Finally, plaintiffs claim that defendants Wild and Hayes deliberately attempted to perpetrate frauds upon the court, and such behavior should be a sufficient reason for the court to exert personal jurisdiction. Plaintiffs allege that Ronald DeJongh[5] ("DeJongh"), the owner of Wild, deliberately lied when he stated in his affidavit that Wild had never had a distributor in the United States. DeJongh has since filed an amended affidavit, claiming that he misspoke and had meant to say that he never had a distributor in Illinois.

---

[5] DeJongh is not named personally as a defendant in this case.

17

Additionally, plaintiffs accuse Hayes of lying in her affidavit by stating that her websites had been hosted in the United Kingdom since 2003. Hayes disputes this accusation, and stated further in her affidavit that the website had never been hosted in Illinois, a statement that plaintiffs do not contest.

Plaintiffs argue that because Wild and Hayes allegedly lied to the court, the court should exercise personal jurisdiction as a suitable sanction. Plaintiffs cite *Boron v. West Texas Imports, Inc.* as their sole source of law for this claim. 680 F. Supp. 1532 (S.D.Fla 1988). Leaving aside the fact that that case is not controlling in this jurisdiction, *Boron* is distinguishable from the instant case. In *Boron*, the defendants misrepresented the truth about their contacts *with the forum state* in an effort to avoid jurisdiction. *Id.* at 1535-36. Thus, even if no misrepresentation had been made to the court, personal jurisdiction would have been proper. No such misrepresentation is alleged by the plaintiffs in this case: plaintiffs do not contend that Wild or Hayes had actual contact with the state of Illinois with respect to the subject matter of the alleged cause of action in this case and then attempted to conceal those facts. Even if Wild and Hayes made misrepresentations to the court concerning jurisdictional issues that were not related to Illinois contacts (and that claim is controverted by the defendants) the court cannot simply conjure personal jurisdiction out of the thin air to use as a sanction. Absent minimum contacts with Illinois, due process requirements prevent this court from exerting personal jurisdiction over the Wild and Hayes.

## Conclusion

For the reasons described above, the court finds that it does not have personal jurisdiction over the defendants, and their motion to dismiss is granted. The court

therefore need not analyze whether plaintiffs failed to state a claim upon which relief can be granted as required by Federal Rule of Civil Procedure 12(b)(6) and the defendants motion to dismiss for that reason is denied as moot.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: October 9, 2007