**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JOHN F. TAMBURO,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| ) | No. 04 C 3317 |
| v. ) | |
| ) | **Judge Nan R. Nolan** |
| **STEVEN DWORKIN,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants move to stay all discovery until the District Judge has ruled on Defendants' Motion to Dismiss Plaintiffs' Seventh Amended Complaint. Defendants contend that "[w]ithout such a stay of discovery, the Individual Defendants will be unduly prejudiced by having to engage in litigation in a forum where they do not reside and where a ruling on the Motion to Dismiss could quite well be dispositive of all issues before the Court." (Mot. 3.) Defendants also assert that their "Motion to Dismiss does not raise factual issues that warrant discovery." (*Id.* 7.)

**I. BACKGROUND**

On May 11, 2004, Plaintiff Tamburo filed his first Complaint in this action. Subsequently, Plaintiffs filed several amended complaints, and on August 24, 2006, they filed their Sixth Amended Complaint. Thereafter, Defendants filed a Motion to Dismiss the Sixth Amended Complaint. On October 9, 2007, the District Judge granted the motion, finding that the Court lacked personal jurisdiction over Defendants. *Tamburo v. Dworkin*, 2007 WL 3046216 (N.D. Ill. 2007). On appeal, the Seventh Circuit affirmed the Court's dismissal of all counts against Defendant Wild Systems for lack of personal

jurisdiction and affirmed the dismissal of the antitrust claims against all Defendants. *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010). The Seventh Circuit, however, reversed the dismissal of the remaining individual Defendants for lack of personal jurisdiction and remanded the case for further proceedings with respect to the remaining state law tort claims. On June 28, 2010, Plaintiffs filed their Seventh Amended Complaint. On August 13, 2010, Defendants filed a motion to dismiss the Seventh Amended Complaint.

Plaintiffs' claims arise out of a dispute over the contents of a dog-pedigree software program Plaintiffs developed by lifting data from Defendants' websites, which Plaintiffs contend were in the public domain. Plaintiffs contend Defendants used the Internet to retaliate against Plaintiffs for copying Defendants' online data. In their Seventh Amended Complaint, Plaintiffs allege that the individual Canadian and United States Defendants engaged in a concerted campaign of blast emails and postings on their websites accusing Plaintiffs of stealing their data and urging dog enthusiasts to boycott Plaintiffs' products. Plaintiffs claim that these emails and Internet postings were defamatory, tortiously interfered with Plaintiffs' software business and constituted a civil conspiracy.

## II. DISCUSSION

The Court has discretion under Rule 26 to "limit the scope of discovery or to order that discovery be conducted in a particular sequence." *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996); *see* Fed. R. Civ. P. 26(c)-(d). However, a stay of discovery is generally only appropriate when a party raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing, *see*

2

*United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79-80 (1988), or pending resolution of qualified immunity claims, *see Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 674 (7th Cir. 1990) *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery.") (internal citation and quotation marks omitted). Following the Supreme Court's decision in *Bell Atlantic Corp. v. Twomby*, 550 U.S. 544 (2007), a blanket stay of discovery may also be appropriate in some antitrust actions. *See DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *3 (N.D. Ill. 2008); *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *4-5 (N.D. Cal. 2007).

"However, one argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Solomon Realty Co. v. Tim Donut U.S. Ltd.*, 2009 WL 2485992, at *2 (S.D. Ohio 2009). As one court has observed,

> The intention of a party to move for judgment on the pleadings is not ordinarily sufficient to justify a stay of discovery. Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation. . . . Since motions to dismiss are a frequent part of federal practice, this provision only makes sense if discovery is not to be stayed pending resolution of such motions. Furthermore, a stay of the type requested by defendants, where a party asserts that dismissal is likely, would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion. Although it is conceivable that a stay might be appropriate where the complaint was utterly frivolous, or filed merely in order to conduct a "fishing expedition" or for settlement value, this is not such a case.

3

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (internal citations omitted). Thus, although Rule 26 gives the Court "authority to stay discovery, this authority must be exercised so as to 'secure the just, speedy and inexpensive determination of every action.'" *Builders Ass'n*, 170 F.R.D. at 437 (quoting Fed. R. Civ. P. 1). Where the Court finds that a stay of discovery is unlikely to significantly expedite the litigation, and may actually slow it down, it will decline to interfere. *See Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 161-62 (N.D. Ill. 1993); *Builders Ass'n*, 170 F.R.D. at 437. Furthermore, *Twombly* and *Iqbal* do not dictate that a motion to stay should be granted every time a motion to dismiss is placed before the Court. *Solomon Realty Co.*, 2009 WL 2485992, at *3 ("Despite the defendants' interpretation of new pleading standards in the wake of *Twombly* and *Iqbal*, the Court is not persuaded that this case presents any need for departure from the general rule that a pending motion to dismiss does not warrant a stay of discovery.").

Here, Defendants are not raising a threshold issue such as immunity from suit, their jurisdictional arguments have already been ruled upon, and Plaintiffs' antitrust claims have been dismissed. Nor can the Court conclude that Plaintiffs' remaining claims are utterly frivolous or patently without merit. Furthermore, Plaintiffs' claims have been pending for over six years, and a stay of discovery will further delay resolution of this action. Thus, the Court is not persuaded that this case presents a need for departure from the general rule that a pending garden-variety motion to dismiss does not warrant a stay of discovery. *See Solomon Realty*, 2009 WL 2485992, at *2.

Nevertheless, the Rule 26 proportionality test allows the Court to "limit discovery if it determines that the burden of the discovery outweighs its benefit." *In re IKB*

4

*Deutsche Industriebank AG*, 2010 WL 1526070, at *5 (N.D. Ill. 2010); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii). "The 'metrics' set forth in Rule 26(b)(2)(C)(iii) provide courts significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 294 (2010).[1] "If courts and litigants approach discovery with the mindset of proportionality, there is the potential for real savings in both dollars and time to resolution." John L. Carroll, *Proportionality in Discovery: A Cautionary Tale*, 32 Campbell L. Rev. 455, 460 (2010).

Here, the Court notes that while this action has been pending for over six years, Plaintiffs' claims have been in constant flux—they are on their Seventh Amended Complaint—and the pending motion to dismiss may alter the scope of discovery. Accordingly, to ensure that discovery is proportional to the specific circumstances of this case, and to secure the just, speedy, and inexpensive determination of this action, the Court orders a phased discovery schedule. *See* The Sedona Conference, *supra*, at 297 (If the litigation is in its early stages, "the court, or the parties on their own initiative, may find it appropriate to conduct discovery in phases, starting with discovery of clearly relevant information located in the most accessible and lease expensive sources. Phasing discovery in this manner may allow the parties to develop the facts of the case

---

[1] "The Sedona Conference is a nonprofit legal policy research and educational organization which sponsors Working Groups on cutting-edge issues of law. The Working Group on Electronic Document Production is comprised of judges, attorneys, and technologists experienced in electronic discovery and document management matters." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 560 n.3 (N.D. Ill. 2008).

sufficiently to determine whether, at a later date, further potentially more burdensome and expensive discovery is necessary or warranted."); Carroll, *supra*, at 460-61 ("The proportionality concept also guides the court to use common sense techniques for managing discovery, like phased discovery or sequenced discovery. . . . Properly used, the proportionality tools available under the Federal Rules of Civil Procedure can go a long way toward reaching the long sought-after goal of Rule 1: securing the 'just, speedy, and inexpensive determination of every action and proceeding.'"). During the initial phase, the parties shall serve only written discovery on the named parties. Nonparty discovery shall be postponed until phase two, after the parties have exhausted seeking the requested information from one another.

Within the next two weeks, the parties shall conduct an in-person meet and confer to prepare a phased discovery schedule. The parties are expected to be familiar with the Case Management Procedures regarding discovery on the Court's website, the Seventh Circuit's Electronic Discovery Pilot Program's Principles Relating to the Discovery of Electronically Stored Information, and the Sedona Conference Cooperation Proclamation, available at www.thesedonaconference.org.[2] The parties are ordered to actively engage in cooperative discussions to facilitate a logical discovery flow. *See Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *13-14 (D. Colo. 2010) ("[T]he Cooperation Proclamation correctly recognizes that while counsel are 'retained to be zealous

---

[2] "The Sedona Conference Cooperation Proclamation calls on trial lawyers, in-house counsel, and judges to rethink the contentious practices that have grown up around civil discovery and refocus litigation toward the substantive resolution of legal disputes." <www.thesedonaconference.org>; *see Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, 2009 WL 2243854 (S.D. Ohio 2009) ("The Sedona Conference has issued its Cooperation Proclamation to attempt to move litigators in the direction of cooperating by suggesting methods for doing so.").

advocates for their clients, they bear a professional obligation to conduct discovery in a diligent and candid manner. . . . Cooperation does not conflict with the advancement of their clients' interests—it enhances them. Only when lawyers confuse *advocacy* with *adversarial* conduct are these twin duties in conflict.'"). For example, to the extent that the parties have not completed their initial disclosures pursuant to Rule 26(a), or if their initial disclosures require updating, the parties should focus their efforts on completing their Rule 26(a) requirement before proceeding to other discovery requests. Second, the parties should identify which claims are most likely to go forward and concentrate their discovery efforts in that direction before moving on to other claims. Third, the parties should prioritize their efforts on discovery that is less expensive and burdensome. Finally, nothing in this Order shall prejudice the parties from conducting all forms of discovery after the pending motion to dismiss has been ruled upon.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss [Doc. 345] is **GRANTED** in part and **DENIED** in part. A status conference is set for 01/11/2011 at 9:00 a.m. Within 14 days of the entry of this Order, the parties will file a joint status report, describing the progress they have made in formulating a discovery schedule and conducting phase one discovery.

E N T E R:

*Nan R. Nolan*

Dated: November 17, 2010 _____

NAN R. NOLAN
United States Magistrate Judge

7