UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN F. TAMBURO, d/b/a MAN'S )
BEST FRIEND SOFTWARE, and )
VERSITY CORPORATION, )
 )
      Plaintiffs, )
 ) Case No. 04 C 3317
  v. )
 ) Judge Joan B. Gottschall
Estate of STEVEN DWORKIN, KRISTEN )
HENRY, ROXANNE HAYES, and KAREN )
MILLS, )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Kristen Henry, Roxanne Hayes, Karen Mills, and the estate of Steven Dworkin have moved to dismiss the seventh amended complaint of John F. Tamburo ("Tamburo") d/b/a Man's Best Friend Software ("MBFS") and Versity Corporation ("Versity"), which did business as MBFS from March 1999 to May 2004. For the reasons set forth below, the motion is granted in part and denied in part.

### I.    BACKGROUND

MBFS operates The Breeder's Standard™.NET (also known as "TBS.NET"), a web-based database that customers can use to research the pedigrees of dogs. (Seventh Am. Compl. ¶¶ 39-43.) MBFS populated its database, in part, by using an automatic browsing program to harvest dog pedigree information from the websites of dog enthusiasts, including Dworkin, Henry, Hayes, and Mills. (*Id*. ¶¶ 42-44, 46-47, & 59.) Tamburo and Versity allege that Dworkin, Henry, Hayes, and Mills knew that it is common practice and industry standard on the internet that a website that does not use

1

commonly accepted methods of excluding automatic browsing programs is understood to have invited all comers to copy the information therein. (*Id.* ¶¶ 57-58.) Dworkin, Henry, Hayes, and Mills allegedly did not equip their websites with any commonly accepted method of excluding automatic browsing programs. (*Id.* ¶¶ 47-58.) Accordingly, Tamburo and Versity allege that the dog pedigree information that appeared on their websites was free and publicly available. (*Id.* ¶ 44.) Tamburo and Versity complain that they were injured when Dworkin, Henry, Hayes, and Mills made website postings and sent email blasts accusing MBFS of stealing the dog pedigree information that appeared on their websites. (*Id.* ¶¶ 73-100 & 106-108.) Tamburo and Versity filed their seventh amended complaint seeking a declaratory judgment that, *inter alia*, their conduct was lawful and seeking damages under Illinois law for defamation, trade libel, civil conspiracy, and tortious interference with contractual relationships and prospective economic advantage. For a more complete recitation of the underlying facts and history of the case, see the court's prior opinion and that of the United States Court of Appeals for the Seventh Circuit. *See Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010); *Tamburo v. Dworkin*, No. 04 C 3317, 2007 WL 3046216 (N.D. Ill. Oct. 9, 2007).

## II.  LEGAL STANDARD

Rule 12(b)(6) enables a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (*quoting Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)). Legal conclusions, however, are not entitled

to any assumption of truth. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the plaintiff must provide enough factual allegations to state a claim for relief that is not only conceivable, but "plausible on its face." *Id.* at 555 & 570; *see Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

### III. ANALYSIS

**1. Whether Tamburo is the true party in interest**

As the court stated in its June 24, 2005 order, Tamburo is not the real party in interest in this suit "because 'all of the actions alleged in the complaint arise from conduct initiated by Versity' and the context of the allegedly defamatory or otherwise

3

unprivileged statements makes clear that the statements referenced [Man's Best Friend Software] as a business." (Order 3, June 24, 2005, ECF No. 114.) Accordingly, counts III, V, VII, VIII, and IX – which are brought on behalf of Tamburo alone – are dismissed and counts I and X are similarly dismissed insofar as they are brought on behalf of Tamburo.

2. **Count I: Declaratory Judgment**

The defendants argue that Versity's declaratory judgment claim should be dismissed because "there is no actual controversy between the parties as to any of the issues on which Plaintiffs seek declaratory judgment." (Defs.' Mot. to Dismiss Pls.' Seventh Am. Compl. at 17.) Versity seeks a declaration that:

a) copying facts from websites is not a violation of state or federal law, and "claims by Defendants as to 'copyright' to such information [sic], or as to the ownership thereof, are void as a matter of law,"

b) "website 'terms of use' that prohibit non-automated copying of animal pedigree data into commercial pedigree software are unlawful and unenforceable,"

c) "the defendants, by the placement of restrictive terms that purport to ban the non-automated copying of data from their web sites if it can be commercially used constitutes a misuse of the underlying copyright(s) of their web sites, rendering said copyrights null and void under United States and Canadian law . . . ."

(Seventh Am. Compl. at 21-22.)

"Federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Wis. Envtl. Decade, Inc. v. State Bar of Wis.*, 747 F.2d 407, 410 (7th Cir. 1984). "The jurisdiction of such courts is accordingly limited to actual cases and controversies." *Id.* In order to determine whether there is an actual controversy between the parties, the court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). "The difference between an abstract question calling for an advisory opinion and a ripe 'case or controversy' is one of degree, not discernible by any precise test." *Wis. Envtl. Decade*, 747 F.2d at 410.

The Seventh Circuit's analysis in *Wisconsin Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407 (1984), is instructive even though, unlike here, the Seventh Circuit was considering a request for a declaratory judgment that a state law was unconstitutional. In *Wisconsin Environmental Decade*, a nonlawyer who had been advocating on behalf of his nonprofit before a legislative agency sought a declaratory judgment that he had a First Amendment right to do so without regard to Wisconsin rules prohibiting the unauthorized practice of law. *Id*. at 409. The Seventh Circuit held that a declaratory judgment was inappropriate because there was no actual controversy. *Id.* at 409. The Seventh Circuit reasoned that the nonlawyer was not in immediate danger of adverse legal consequences (although the State Bar had known of the nonlawyer's activities for over ten years, they had yet to take action), the threat of adverse legal action

had not caused the nonlawyer to cease his advocacy, and it was uncertain that the Wisconsin Supreme Court would hold that the nonlawyer's activities actually constituted the unauthorized practice of law. *Id.* at 412-13.

A declaratory judgment is also inappropriate in Versity's case. Versity contends that the defendants have accused it of committing a federal felony, "where an unauthorized person, acting interstate, 'causes to be accessed' a computer to 'obtain data or services.'" (Pls.' Mem. in Opp'n to Defs.' Fourth Mot. to Dismiss at 15.) However, as in *Wisconsin Environmental Decade*, it appears unlikely that Versity will suffer such adverse legal consequences because it used an automatic browsing program to harvest facts from dog enthusiasts' websites. Although Versity has been harvesting such information since 2004, it does not allege that a federal prosecutor or any other federal official has ever suggested that the federal government may prosecute it for a violation of federal law. Furthermore, despite the fact that the defendants have been well aware of Versity's activities since 2004, Versity does not allege that they have instituted copyright or other proceedings against it. In fact, Versity alleges that Henry's attorney advised her that Versity had acted lawfully and that she repeated this advice to the other defendants. (Seventh Am. Compl. ¶ 89.) Given this, the possibility that the defendants will bring legal action against Versity is remote.

In addition, Versity does not allege that the threat of adverse legal consequences caused it to cease or alter its business activities. Versity contends in its response that it faces the immediate threat of litigation because the defendants "have threatened Plaintiffs with all manner of counterclaims, including copyright infringement," and listed "a copyright interest" as one of their defenses in an August 19, 2010 status report filed with

Magistrate Judge Nolan. (Pls.' Mem. in Opp'n to Defs.' Fourth Mot. to Dismiss at 16.) However, "[o]nly the actions of the declaratory defendant known to the declaratory plaintiff at the time the action is commenced can be considered in determining whether such a threat exists." *Norfolk S. Ry. Co. v. Guthrie*, 233 F.3d 532, 534-35 (7th Cir. 2000). As Versity does not suggest that the defendants had threatened litigation before it initially made its declaratory judgment claim, this argument does not help Versity's cause. Thus, as in *Wisconsin Environmental Decade*, "the controversy lacks the degree of immediacy requisite for adjudication by a federal court." 747 F.2d at 412.

Furthermore, even if there were an actual controversy, this court would exercise its discretion to decline to grant a declaratory judgment as broad as that which Versity seeks. "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so." *Medimmune,* 549 U.S. at 136. "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (*quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)). Versity seeks a declaratory judgment that, *inter alia*, its copying of facts from websites did not violate *any* state or federal law. (Seventh Am. Compl. ¶ 110.) This court declines to issue such a broad declaration especially where Versity does not stand to suffer any harm or be placed under immediate threat of suit in the absence of declaratory relief. Accordingly, Count I is dismissed.

**3.     Count II: Tortious Interference with a Contractual Relationship**

"In order to state a claim for tortious interference with contractual rights, [a plaintiff] must plead: (1) the existence of a contract; (2) the defendants' awareness of the

contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005). The defendants argue that Versity's tortious interference with contractual rights claim should be dismissed because Versity has not pled: a) the existence of any enforceable contract between it and a specific third party, b) that any of the defendants were aware of any such contract, and c) that the defendants intentionally and unjustifiably induced a breach of a contract. (Defs.' Mot. to Dismiss Pls.' Seventh Am. Compl. at 5.) Versity argues that federal notice pleading does not require it to identify the details of the contract or the identity of other parties to the contract. (Pls.' Mem. in Opp'n to Defs.' Fourth Mot. to Dismiss at 5.) This court agrees.

This is not a case in which the plaintiff's allegations were so unaccompanied by factual context that the plaintiff's claims were merely conceivable and not plausible. On the contrary, Versity spends more than 100 paragraphs of its seventh amended complaint laying out factual allegations which, if true, suggest that the defendants a) jointly orchestrated a campaign to boycott Versity's products because Versity allegedly stole their data and b) reveled in news that Versity's customers had canceled their subscriptions. This court can reasonably infer from this factual background that the defendants: 1) knew that Versity had contracts with dog enthusiasts (after all, the defendants' concern was that Versity was selling their data at $9.95/month and a sale of such subscriptions cannot occur without a customer accepting the seller's offer), 2) intended to induce those enthusiasts to breach those contracts, and 3) actually caused the breach of those contracts. (Seventh Am. Compl. ¶ 76.) Versity has also pled that it has lost revenue as a result of the defendants' actions. (*See Id*. ¶¶ 106-08.) The

defendants are certainly on notice of the factual basis of Versity's claim. Given all of the above, Versity has properly pled its tortious interference with a contractual relationship claim.

The defendants further argue that Versity has essentially pled itself out of court because the fact that the defendants' statements were protected by a conditional privilege is apparent from the face of the complaint. (Defs.' Mot. to Dismiss Pls.' Seventh Am. Compl. at 7-8.) "[A]n otherwise defamatory statement may not be actionable if a qualified privilege exists." *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). "Illinois common law protects 'honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information.'" *Id.* (*quoting Kuwik v. Starmark Star Marketing & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993)). Under Illinois law, a conditional privilege exists where "some interest of the person who publishes the defamatory matter is involved." *Kuwik*, 619 N.E.2d at 135 (quoting S. Harper, F. James & O. Gray, The Law of Torts § 5.25, at 216 (2d ed. 1986)). However, even if the defendants were entitled to a privilege, under Illinois law, their "communication[s] can still be defamatory and actionable if the privilege has been abused." *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 536 (7th Cir. 2009).

Thus, even if Versity alleged facts that suggest that the defendants' statements were privileged, if Versity also alleged facts that plausibly suggest that the defendants forfeited that privilege by abusing it, then Versity's claim survives. A defaming party forfeits its privilege when it acts with reckless disregard of the defamed party's rights by making "a statement 'despite a high degree of awareness of probable falsity or

entertaining serious doubts as to its truth'" or despite failing to investigate the truth. *Id.* (*quoting Kuwik*, 619 N.E.2d at 133). "Although whether a qualified privilege exists is a question of law for the court, the issue of whether the privilege was abused is a question of fact for the jury." *Id.*

Even assuming that it is apparent from the face of Versity's complaint that a conditional privilege applied to the defendants' statements, it is also apparent that – viewing the facts in a light most favorable to Versity (as the court must at this stage) – the defendants abused any such privilege by either failing to properly investigate or outright disregarding whether their allegations that Versity stole their data were actually true. Versity alleges that, because the defendants did not conform to the industry practice of equipping their websites with commonly accepted methods of excluding automatic browsing programs like the one Versity used to harvest the dog pedigree information that the defendants allege was stolen, the defendants essentially issued a message to all comers that the information therein was free for the taking. If this is true, then the defendants' widespread dissemination of allegations that Versity "stole" their information and thereby engaged in "unethical" behavior was reckless behavior in disregard of Versity's rights, and they have forfeited any conditional privilege to which they may have been entitled. Versity has not pled itself out of court; even if a conditional privilege were apparent from the face of the complaint, the abuse, and consequent forfeiture, of the privilege is also apparent from the face of the complaint.

Because Versity has sufficiently pled its tortious interference with a contractual relationship claim, the defendants' motion to dismiss the plaintiffs' seventh amended complaint is denied as to Count II.

### 4. Count IV: Tortious Interference with Prospective Economic Advantage

In order to state a claim for tortious interference with prospective economic advantage under Illinois law, a plaintiff must allege: (1) "'a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 667 (7th Cir. 2007) (*quoting Evans v. City of Chicago*, 434 F.3d 916, 929 (7th Cir. 2006)). The parties dispute whether anything further is required in order for a plaintiff to have properly stated a claim for tortious interference with prospective economic advantage.

Citing *Ali v. Shaw*, 481 F.3d 942 (7th Cir. 2007), the defendants argue that a plaintiff must allege a business expectancy with a *specific third party* in order to survive a motion to dismiss, and, as Versity has not done so, its claim must fail. *Id.* at 946 (*citing Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005) which states, "A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party."). However, the defendants' reliance on *Ali* is misplaced. In *Ali*, Ali, a model employee of the Cook County Board of Review (the "Board"), allegedly expressed satisfaction that Shaw, her boss and an elected member of the Board, lost his bid for reelection. 481 F.3d at 943-45. Shaw then asked that Ali be fired for insubordination. *Id.* The Board fired Ali. *Id.* The Seventh Circuit affirmed the district court's entry of summary judgment in Shaw's favor because Shaw's actions did not constitute tortious

11

interference with prospective economic advantage. *Ali*, 481 F.3d at 946. The Seventh Circuit reasoned that the controlling Illinois Supreme Court case, *Fellhauer v. City of Geneva*, 568 N.E.2d 870 (Ill. 1991), clarified that tortious interference with prospective economic advantage claims were appropriate only in "cases of '*outsiders* intermeddling maliciously in the contracts or affairs of other parties.'" *Ali*, 481 F.3d at 945 (*quoting Fellhauer*, 568 N.E.2d at 879) (emphasis added). Such an action was not appropriate where only two parties – e.g. an employer and its employee – were involved. In other words, the defendant who tortiously interfered could not also be the party with whom the plaintiff reasonably expected to have a valid business relationship – there had to be a third party (someone not a party to the expected business relationship) who interfered with that expectancy. Since Shaw was acting in his official role as a member of the Board when he asked for Ali to be terminated, it was as if Ali was alleging that the Board itself tortiously interfered with her expected relationship with the Board. Given this, Ali's claim failed. The Seventh Circuit held that "only when the actions of a third party cause an employer to decide to fire an at-will employee, the third party might be liable in tort." *Ali*, 481 F.3d at 945.

The Seventh Circuit opined in dicta that its holding was consistent with recent Illinois cases. *Id.* at 945-46. To illustrate its point, the Seventh Circuit recited the following language from these cases: "a plaintiff states a cause of action only if he alleges a business expectancy with a specific third party." *Id.* at 946 (*quoting Schuler v. Abbott Labs.*, 639 N.E.2d 144, 147 (Ill. App. Ct. 1993), *and Assoc. Underwriters of Am. Agency*, 826 N.E.2d at 1169). Given that the Illinois courts spoke of a "third party", the Seventh Circuit, by highlighting this language, made clear that the Illinois courts

contemplated that there be at least three parties involved in situations that give rise to a tortious interference with prospective economic advantage claim. The Seventh Circuit did not cite this language in order to hold – as the defendants contend – that a plaintiff in federal court must allege a business expectancy with a specific identified third party in order to survive a motion to dismiss.

*Ali* does not – as defendants argue – stand for the proposition that a plaintiff operating under federal notice pleading standards must allege a business expectancy with a specific third party in order to survive a motion to dismiss. Rather, in *Ali*, the Seventh Circuit merely recited language from Illinois cases that spoke of a "third party" to illustrate the point that outsider intermeddling was necessary for there to be a tortious interference with prospective economic advantage claim.

As Versity correctly points out, *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998), held that "[t]he Federal Rules do not require that [a] complaint allege the specific third party or class of third parties with whom [the plaintiff] claims to have had a valid business expectancy." The *Cook* court noted that *Schuler v. Abbott Labs.*, 639 N.E.2d 144 (Ill. App. Ct. 1993), held that, in order to state a claim, a plaintiff must identify a specific third party and allege "'action by the interfering party directed towards the party with whom the plaintiff expects to do business.'" *Cook*, 141 F.3d at 328 (*quoting Schuler*, 639 N.E.2d at 147). The *Cook* court declined to apply this holding from *Schuler* because it "stray[ed] rather far afield from the minimal requirements of federal notice pleading." *Cook*, 141 F.3d at 328. The *Cook* court stated, "Having alleged that Winfrey improperly interfered with his 'ability to enter into contracts and business relationships with third parties interested in purchasing the rights to publication of his experiences',

Cook is under no obligation to plead further the facts that he believes support his claim."[1] *Id.* (quoting Cook's amended complaint). This court agrees that plaintiffs need not identify a specific third party or class of third parties.

Versity must in addition plead that: a) it had a reasonable expectancy of entering into a valid business relationship, b) the defendants knew of this expectancy, c) the defendants intentionally and unjustifiably induced or caused the breach or termination of the expectancy, and d) it suffered damage as a result. Versity pled that it designed and sold software for animal breeders, had a customer base, sold over $3,300 of product between May 1, 2004 and May 4, 2004, and therefore "had a legitimate expectancy to do business with those breeders and exhibitors." (Seventh Am. Compl. ¶¶ 106, 128, 130). Furthermore, Versity alleged that the defendants were aware of Versity's business and its customer base and jointly orchestrated a campaign to boycott Versity's products because Versity stole their data. (*See generally id.*) Versity alleges that, as a result, its sales plummeted. (*Id.* ¶¶ 106-08.) These allegations constitute a facially plausible claim that the defendants tortiously interfered with its prospective economic advantage.

The defendants argue that even if Versity has properly pled its Count IV, they are protected by a privilege to compete. (Defs.' Mot. to Dismiss Pls.' Seventh Am. Compl. at 8.) There is a "'privilege to engage in business and to compete that allows one to

---

[1] Of course, "the [*Cook*] case was decided under a more relaxed pleading standard derived from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, No. 07 C 5902, 2010 WL 1172565, at *5 (N.D. Ill. Mar. 22, 2010) (*citing Cook*, 141 F.3d at 329, where it found "that plaintiff's allegations were sufficient because 'he might be able to prove a set of facts [consistent with the allegations] . . . that would entitle him to relief.'"). The Supreme Court has since decided in *Twombly* that a claim must be not only conceivable, but "plausible on its face" and "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nevertheless, "[d]istrict courts since *Twombly* have continued to apply [*Cook*] despite the change in the pleading standard, holding that plaintiffs need not identify a specific third party or class of third parties in a complaint for intentional interference with prospective economic advantage." *Del Monte*, 2010 WL 1172565, at *6 (collecting cases).

divert business from one's competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business . . . .'" *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) (*quoting Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1, 8 (Ill. App. Ct. 1995)). "A defendant is entitled to the protection of the privilege of competition provided that the defendant has not employed a wrongful means or is not motivated solely by malice or ill will." *Cromeens,* 349 F.3d at 399. Versity argues that it has alleged facts showing actual malice in paragraphs 58, 60, 77, 84, and 88-92. (Pls.' Mem. in Opp'n to Defs.' Fourth Mot. to Dismiss at 9.) Because it has adequately alleged actual malice, Versity has not pled itself out of court by alleging facts that give rise to a competitor's privilege. Count IV survives.

5.  **Count VI: Trade Libel**

The defendants argue that Versity's trade libel claim should be dismissed because the allegedly libelous statements "do not impugn the quality of [Versity's] goods."[2] (Defs.' Mot. to Dismiss Pls.' Seventh Am. Compl. at 14.) This court agrees. To state a claim for trade libel, also known as commercial disparagement[3], Versity must allege "'that [the] defendants made false and demeaning statements regarding the quality of [Versity's] goods and services.'" *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) (*quoting Schivarelli v. CBS, Inc.*, 772 N.E.2d 693, 703 (Ill. App. Ct. 2002)). Versity argues that it did so when it alleged that: 1)

---

[2] Defendants' other arguments as to why Versity's trade libel claim should be dismissed raise factual issues more appropriate for summary judgment.

[3] *See Montgomery Ward & Co. v. Dep't Store Emps. of America, CIO*, 79 N.E.2d 46, 52 (Ill. 1948) (noting that the Restatement of Torts classifies trade libels as disparagement.)

Henry wrote "The Breeder's Standard is the thief" and said that TBS.NET contained a "stolen perk," and 2) a third party acting on Hayes' instructions said that the Breeder's Standard program had "stolen several of these 'free' databases." (Pls.' Mem. in Opp'n to Defs.' Fourth Mot. to Dismiss at 12.) These statements attack the honesty of MBFS' business practices, but do not attack, for example, how well MBFS' software works or how accurate and comprehensive a repository of dog pedigree information MBFS provides.[4] Because these allegedly libelous statements attack MBFS' integrity, but not the quality of MBFS' products, Versity has failed to state a claim for trade libel. *Compare Morningware, Inc.*, 673 F. Supp. 2d at 640-41 (holding that an electric oven manufacturer successfully stated a claim for commercial disparagement by pleading that its competitor's statement implied that its products were fake and therefore inferior in quality) *with Schivarelli*, 776 N.E.2d at 702-03 (Ill. App. Ct. 2002) (holding that a hot dog stand owner failed to state a claim for commercial disparagement where the accusation that the owner was cheating the city attacked his business' integrity, but not the quality of its hot dogs). Accordingly, the defendants' motion to dismiss Versity's trade libel claim is granted.

**6.     Count X: Civil Conspiracy**

Civil conspiracy is "'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.'" *Reuter v. Mastercard Int'l, Inc.*, 921 N.E.2d 1205, 1216 (Ill. App. Ct. 2010) (*quoting McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill.

---

[4] While an allegation that a product contains stolen or counterfeit goods may raise doubts about the product's quality, here, it is undisputed that the dog pedigree information that ultimately appeared in MBFS' database was qualitatively the same as the information that appeared on the defendants' websites when MBFS harvested it. *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993-94 (7th Cir. 2004) ("A pirated product is not necessarily inferior to the lawful original; it may indeed be identical to it.").

1999)). "To state a claim for civil conspiracy, a plaintiff must allege facts establishing both (1) an agreement to accomplish such a goal and (2) a tortious act committed in furtherance of that agreement." *Id.* (*quoting McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). "In addition, the plaintiff must allege an injury caused by the defendant." *Id.* The defendants argue that Versity's civil conspiracy claim must be dismissed because Versity has failed to allege that the defendants engaged in any unlawful conduct. (Reply to Pls.' Opp'n to Defs.' Mot. to Dismiss at 8.) Since Versity's tortious interference claims survive, Versity has clearly alleged that the defendants engaged in unlawful conduct.

The defendants further argue that Versity's civil conspiracy claim should be dismissed because Versity alleges that the defendants conspired to commit extortion, but extortion is not a recognized tort in Illinois. (Defs.' Mot. to Dismiss Pls.' Seventh Am. Compl. at 15-16.) In its response, Versity argues that the torts underlying its conspiracy claim are trade libel and tortious interference. (Pls.' Mem. in Opp'n to Defs.' Fourth Mot. to Dismiss at 14. ("[I]n this case, the extortion is not the gist of the civil conspiracy, the libels and interferences are.")) In reply, the defendants argue that Versity's civil conspiracy claim should be dismissed because it involves the same defendants and conduct as the trade libel and tortious interference claims. (Reply to Pls.' Opp'n to Defs.' Mot. to Dismiss at 7-8.) On this issue, the court agrees. "[A] conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled." *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996) (*citing Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982), *and Belkow v. Celotex Corp.*, 722 F. Supp. 1547, 1550 (N.D. Ill. 1989)); *see*

17

*also Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982). Accordingly, Versity's civil conspiracy claim is dismissed.

### IV. CONCLUSION

Counts II and IV survive. Counts I, III, V, VI, VII, VIII, IX, and X are dismissed.

ENTER:

\_\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 29, 2010